OPINION of the Court, by
Ch. J. Boyle.
This \vas a controversy for land, under adverse interfering claims. Both parties being dissatisfied with the decree of the court below, have appealed. Conn’s heirs being defendants in that court, and relying upon their elder patent, the contest must depend upon the validity of the claim of Manifee, &c. who were the complainants. They derive their title under the following entry, viz.
“ 27th of May * 1780, Isaac Ruddle and Maurice Bird enter 1000 acres on a treasury warrant, on the trace from Licking to Lexington, on the squth side of the dividing ridge, joining the north branch of the north fork of Elkhorn, including an improvement made by Isaac Ruddle, on the side of the ridge, at a spring where Isaac Muddle’s name is cut on a tree and several saplings marked, also a spring running out of the bank into said branch, about half a mile from the above improvements, and a tree marked C. K.”
Preliminary to the discussion of the merits of this entry, it is proper to settle a question arising out of a bill of exception taken to the opinion of the court below in admitting the deposition of Isaac Ruddle to be read as evidence on the part of the complainants. It was alleged that he is an incompetent witness, inasmuch as the land was entered, surveyed and patented in his name, and he had conveyed it to his son, through whom the complainants claim either mediately or immediately. ■
Upon adverting to the deed of conveyance to his son, it is found to contain a warranty only against himself and those claiming under him ; and according to *624 the decision of the case of Henderson vs. Bradford, (vol. 1, 509) he is not responsible on a warranty of this kind in case of eviction by an adverse claim. It is well established, that a vendor without warranty is a competent witness in support of the vendee’s title — -Bushby vs. Greenslate, 1 Stra. 445. It follows, therefore, as Isaac Ruddle would not be responsible on his covenant oí warranty, in case the complainants should lose the land in controversy, that he cannot be incompetent on the score of interest, and that his deposition was properly admitted to be read in evidence.
The furvey fálr*«ed.
In the investigation of the merits of the entry in question, the first call which demands the attention of the court, is that for “the trace from Licking to Lexington.” There are three traces or roads delineated on the connected plat as leading from Licking, or its waters, to Lexington, all of which appear from the evidence in the cause to have existed before and at the time this entry was made. Two of these lead from Licking, or its waters, to Brvan’s Station, on Elkhorn, and thence to Lexington. The third leads from Licking to Lexington, without passing any intermediate station. This latter is claimed by the complainants as the one intended by the entry. It appears to have been made in the spring of the year 1779, when Ruddle, with upwards of fifty others, marched from Harrods-burg by Lexington to Licking, where they built the station afterwards known by the name of Ruddle’s Station. That subsequent adventurers would have understood the entry to call for this trace, rather than either of the others, is highly probable from the evidence. A considerable number of the witnesses, indeed almost every one who seems to have travelled the trace, declare that it was generally called and known by tbs name of the trace from Licking to Lexington; whereas none, even of those most conversant with the other traces, say that either of them was known by that name, and some of them indirect terms declare that tbev had not heard them so called. It is true that some of the witnesses also knew this trace by the name of the trace from Ruddle’s Station to Lexington, but the other name seems to have been the most current. It probably took its rise from the circumstance that the trace was made before the station was built; a ad the name *625 leaving once obtained, it was natural enough to continue to be the most prevalent. But independent of the name the trace had acquired, the call appears in point t i propriety of description better to fit the trace claimed titan either of the others. Bryan’s Station, by which the other traces passed, after leaving the waters of Licking, before they reached Lexington, was aplace at that early period of at least as great note and distinction as Lexington j and probably from the circumstance of the commissioners for adjusting land claims having s.U there, was more so. If either of the traces from Licking by Bryan’s Station were intended, it would have been most natural, as well as most proper, to have described it with reference to Bryan’s Station, rather than Lexington, the former being more contiguous to Licking and certainly not less distinguished than the latter. But if the trace claimed be the one intended, no such objection to the description occurs, there being no intervening station nor any other object of equal distinction by which the trace passed after leaving the waters of Licking until it reached Lexington.
The next object called for is the dividing ridge. That the ridge which separates the waters of Elkhom from those of Licking, is the one intended, does not admit of a reasonable doubt. The entry having an allusion to those watercourses, and to no others, seems by the call for the dividing ridge strongly if not necessarily to imply the ridge which divides them, and other adventurers we think would have so understood the call.
1 he identity of the trace and the ridge being established, they furnish a clew by which those in search of the other objects of the location would have been enabled to find them without difficulty. That when found they would have been recognised as those intended by the calls of the entry, is evident. One of the springs runs out of the south side of the ridge, near its summit, at which there was an improvement made by Ruddle, by cutting down some saplings and marking others, and also a tree marked L R. These letters are indeed only the initials of Isaac Ruddle’s name, and may, as wan allege! by the counsel for Conn’s heirs, represent the Barr.es of other men, as well as that, of Ruddle.
*626 But this ’maccuracv was not calculated to mislead Sr deceive, since in all other respects the description ex — , actly coincides with the objects. The other spring, with the tree marked C. K. is on the trace towards Lexington, about the distance from the former called for in the entry, and in other respects corresponds with the description given of it in the entry. In addition to these positive evidences of the identity of the springs intended to be called for in the location, we may mention the circumstance of there being no other spring on the trace from North Eikhorn, until it arrives at the dividing ridge. A subsequent adventurer could not therefore be mistaken with respect to the springs intended.
The only remaining question is how the entry'should •he surveyed ?
The call for “ lying on the sooth side of the dividing ridge, evidently excludes the idea that any part of the survey should be on the north of the ridge. To transpose the word south, as was contended should be done by the counsel for the complainants, so as to make it refer to the spring on the side of the ridge, instead of referring to the side of the ridge, would be perfectly arbitrary, and unwarranted bv any precedent or any principle of construction. Where the obvious meaning of an entry required it, there has been, in the construction of entries, sometimes a transposition of the relation of one clause to another, different from that which their arrangement would seem te bear ; but to do so where it would be opposed, as it is in this instance, to the clear sense of the entry, is a liberty that cannot be indulged.
The call for “ adjoining the north branch of the north fork of Eikhorn,” fixes the boundary of the survey ®n that side. What branch is meant (if that were otherwise doubtful) is explained by the subsequent call for a spring running out of the bank into said branch, As the branch which the land was to adjoin is the only one before named, the word said must be understood as referring to it, and consequently designates it as the one intended by the previous call.
The other calls, to lie on the trace and include the springs, must be complied with ; but as the extent t@ which the survey should go on each side of the trace, aad beyond the springs on the trace, in either direction. *627 is not fixed and defined by the calls for these objects, their only effect, farther than a literal compliance with them would require, must be given to them by construction. This effect would be to extend equal distances on each side of the trace, and from each spring along the trace. ^ ■
But upon th® principle repeatedly recognised by this court, the effect of a call, so far as it is produced by construction, must yield to an express call, whose effect does not depend upon construction, so far as the ex* press call is repugnant to the constructive effect of the other call, but no farther. On one side, therefore, the survey should bind upon the summit of the dividing ridge, barely including the south side thereof; on the other side the survey should bind on that branch of the little north fork of Eikhorn, into which the .spring marked on the plat I. ivl. empties ; and as that branch, above the trace, has its source in the south side of the dividing ridge, at a less distance from the trac® than the constructive effect of the call to lie on the trace would require, the survey should include the whole of the land above the trace and between the ridge and th® branch aforesaid, and should extend below the trace equal distances when reduced to straight lyres, down the said branch and along the ridge, aad so far that a line drawn from the said branch, and another from the summit of the ridge on the south side thereof, will intersect each other at right angles and include the quantity. • ■
To so much of the land in controversy as is included iti the complainant's survey as made, and will also be included in it when made according to the foregoing-opinion, they have shewn themselves entitled, and the defendants should he decreed to convey to them accordingly. But by this opinion and decree the complainants* survey will be made less favorably to them than i t was directed fay the court below, consequently they had no right, and the defendants had a right to complain of the decree of the inferior court.
The complainants must therefore pay-the costs of iioth appeals.